IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NABO YU and SICHENG YU,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ANTHONY J. BLINKEN, MARGARET L. TAYLOR, R. NICHOLAS BURNS, ANNY HO, and U.S. DEPARTMENT OF STATE,**<br><br>**Defendants.** | **CIVIL ACTION NO. 24-6347** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                                **June 12, 2025**

Plaintiffs Nabo and Sicheng Yu filed a writ of mandamus and lawsuit against the Department of State and individual government Defendants[1] pursuant to the Immigration and National Act ("INA"), requesting relief under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 701 *et seq.* Plaintiffs allege that a decision on Plaintiff-son Nabo's immigrant visa application has been unreasonably delayed and seek, in part, an order compelling Defendants to finish processing Nabo's application.[2]

The Defendants have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim, respectively. For the reasons stated below, Defendants' motion will be denied.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of State Marco Rubio is substituted for Secretary Antony Blinken and U.S. Ambassador to the Peoples' Republic of China David Perdue is substituted for R. Nicholas Burns. The Court directs the Clerk to update the docket sheet to reflect these changes.

[2] Compl. ¶ 20 [Doc. No. 1].

I.  **BACKGROUND**

   A.   **Factual Background**[3]

Plaintiff Sicheng Yu is a U.S. lawful permanent resident and the self-petitioner for the approved EB-1A I-140 immigrant visa petition filed on behalf of himself and his family.[4] The family's petition was filed on December 23, 2019 and approved on January 3, 2020.[5] Plaintiff Nabo Yu, Sicheng's son, then applied for a U.S. immigrant visa based on his father's approved I-140 family petition.[6] Nabo began studying in the U.S. during high school on an F-1 visa.[7] He subsequently obtained an F-1 visa to attend the University of Pennsylvania, where he is an engineering student.[8]

In July 2023, after completing one year of his intended four-year course of study, Nabo returned to China to apply for an E visa and another F-1 visa, both of which were placed into administrative processing and never adjudicated.[9] While Nabo remained in China awaiting the approval of his E visa and/or F-1 visa, his father, mother, and younger brother were all approved for their immigrant visas, entered the U.S., and were issued "green cards" on or about September 1, 2023.[10]

---

[3] Plaintiffs' factual allegations set forth in the Complaint and the accompanying exhibits must be accepted as true for the purpose of deciding this motion to dismiss. *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024). Where relevant, the Court has also considered and included facts set forth in Defendants' Motion to Dismiss, Doc. No. 6, and Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, Doc. No. 8.

[4] Compl. at ¶ 1 [Doc. No. 1].

[5] *Id.*

[6] *Id.* ¶ 2.

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶ 3.

[10] *Id* ¶ 4.

Nabo then filed a DS-260 Immigrant Visa and Alien Registration Application with defendant U.S. Department of State on April 7, 2024 based on his father's approved I-140 petition.[11] On May 7, 2024, Nabo completed his immigrant visa interview at the U.S. Consulate in Guangzhou, China, where the U.S. Consular Officer issued a 221(g) notice placing Nabo's application in "administrative processing" and requesting additional documents, which Nabo submitted on May 13, 2024.[12]

On November 19, 2024, Sicheng emailed the U.S. Consulate in Guangzhou, China, explaining that his son Nabo had withdrawn his F-1 visa application and that his remaining DS-260 immigrant visa application had been in "administrative processing" for more than six months.[13] Nabo's application remains in "administrative processing," and as such he has been unable to join his family in the United States or continue his studies at the University of Pennsylvania.[14]

### B. Procedural Background

Plaintiffs filed this Complaint on November 26, 2024, asserting four claims against the Secretary of State, various State Department officials, and the Department of State. Plaintiffs allege that Defendants have a clear, non-discretionary, and mandatory duty to adjudicate Nabo's application and have failed to do so, entitling them to relief under the Mandamus Act, 28 U.S.C. § 1361 (Count I). Plaintiffs also allege that Defendants are withholding the adjudication of Nabo's immigrant visa application in violation of the APA, 5 U.S.C. § 706(2) (Count II) and 5 U.S.C. § 706(1) (Count III). Lastly, Plaintiffs allege that Defendants have unreasonably delayed

---

[11] *Id.* ¶ 5.

[12] *Id.* ¶¶ 7, 8.

[13] Compl. Ex. K [Doc. No. 1-2].

[14] Compl. ¶ 14 [Doc. No. 1].

the processing of Nabo's immigrant visa application in violation of the APA, 5 U.S.C. § 555(b) (Count IV).[15] Plaintiffs seek to compel Defendants to adjudicate Nabo's visa application through writ of mandamus and seek declaratory and injunctive relief.

The Government moves to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and failure to state a claim.[16] Plaintiffs oppose the Government's motion to dismiss.[17]

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges the Court's power to hear the claim.[18] In reviewing a motion to dismiss under Rule 12(b)(1), a court must first determine whether the attack on its jurisdiction is facial or factual.[19] A facial attack "contests the sufficiency of the pleadings,"[20] whereas a factual attack "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites."[21]

Here, the Government makes a factual attack on subject matter jurisdiction, challenging this Court's actual jurisdiction based on mootness.[22] When a defendant asserts a factual attack on subject matter jurisdiction, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court

---

[15] Compl. [Doc. No. 1].

[16] Mot. Dismiss [Doc. No. 6].

[17] Pls.' Opp'n Mot. Dismiss [Doc. No. 8].

[18] Fed. R. Civ. P. 12(b)(1).

[19] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d. Cir. 2016).

[20] *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

[21] *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up).

[22] Mot. Dismiss at 6, 7 [Doc. No. 6].

from deciding for itself the jurisdictional issues raised in the motion to dismiss.[23] The Court must weigh the evidence relating to jurisdiction, and has the discretion to consider affidavits, documents, and even limited evidentiary hearings to make the jurisdictional determination.[24] The plaintiff has the burden of proving jurisdiction.[25]

### B.  Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. To survive dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[26] In evaluating the sufficiency of a complaint, the court accepts all the well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff.[27] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[29]

### III.  DISCUSSION

The Government makes three arguments in support of dismissal:[30] First, that because the Defendants have already discharged their nondiscretionary duty when the consulate refused to issue Nabo's visa application and placed it into "administrative processing" pursuant to 221(g),

---

[23] *Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000).

[24] *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

[25] *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Perelman v. Perelman*, 919 F. Supp. 2d 512, 520 n.2 (E.D. Pa. 2013).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

[27] *Kalu*, 113 F.4th at 325.

[28] *Iqbal*, 556 U.S. at 678.

[29] *Id.*

[30] *See generally* Mot. Dismiss at 3 [Doc. No. 6].

Plaintiffs' claims are moot and the Court thus lacks subject matter jurisdiction. Second, that the doctrine of consular nonreviewability precludes judicial review of the 221(g) notice and placement into "administrative processing." And third, that on the merits, Plaintiffs cannot demonstrate unreasonable delay.

Plaintiffs respond that the government has not discharged its nondiscretionary duty to review and adjudicate Nabo's visa application through the issuance of the 221(g) notice.[31] Second, Plaintiffs argue that the doctrine of consular nonreviewability does not apply where a decision on the visa application has not been made.[32] Finally, Plaintiffs urge that the Court should not dispose of their unreasonable delay claims at the motion to dismiss stage.[33]

### A.   Subject Matter Jurisdiction

#### 1.   <u>Plaintiffs' claims are not moot because the agency has not discharged its nondiscretionary duty.</u>

The Government first argues the Court does not have subject matter jurisdiction, because Nabo has already received a decision on his visa—they point to the consular office's issuance of a 221(g) notice on the day of Nabo's visa interview as a refusal of the visa. Thus, the Government argues, Plaintiffs' claims are moot.[34]

The APA allows a "reviewing court [to] compel agency action unlawfully withheld or unreasonably delayed[.]"[35] A court's ability to compel agency action, however, is circumscribed;

---

[31] Pls.' Opp'n Mot. Dismiss at 4-11 [Doc. No. 8].

[32] *Id.* at 12.

[33] *Id.* at 14.

[34] The Government bases its defense on mootness doctrine, but standing is the more appropriate inquiry here because the Consulate's refusal to issue Nabo a visa occurred prior to the commencement of litigation. *W. Virginia v. EPA*, 597 U.S. 697, 718-19 (2022) ("[S]tanding concern[s] whether a plaintiff has satisfied the requirement when filing suit . . . . [M]ootness, not standing, [] addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit.'") (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

[35] 5 U.S.C. § 706(1).

the agency must have a discrete, nondelegable duty to act.[36] Upon execution of a visa application, the State Department by regulation has a discrete, nondelegable duty to either issue the visa, refuse the visa application under 8 U.S.C. § 1182(a), 8 U.S.C. § 1201(g), or other applicable law, or discontinue granting the visa under Immigration and Nationality Act ("INA") section 243(d).[37] Section 221(g) of the INA provides that "[n]o visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . [or] (2) the application fails to comply with the provisions of the Act, or the regulations issued thereunder[.]"[38] When a consular officer refuses the issuance of a visa, the consular officer must inform the applicant of the ground(s) of ineligibility and whether there is a mechanism to overcome the refusal.[39]

According to the government, the only nondiscretionary duty imposed by the relevant regulations cited above is to issue or refuse a visa, and the Consulate discharged this duty when it issued the 221(g) notice of Nabo's visa application and placed his application in "administrative processing" after his interview on May 7, 2024. The government argues that if a visa applicant has had a consular interview, and his application is "refused" yet placed into administrative processing, there can still be no claim under the APA because the State Department has discharged its legal obligation to adjudicate the petition. Plaintiffs urge that the consular office did not "refuse" the visa at the interview because it requested further documents and indicated that it was placing Nabo's application into administrative processing, and thus the Consulate has

---

[36] *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-65 (2004); *Massie v. U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 340, 347 (3d Cir. 2010).

[37] 22 C.F.R. § 41.121(a).

[38] 8 U.S.C. § 1201(g)

[39] 22 C.F.R. § 41.121(b)(1).

7

not discharged its nondelegable duty of adjudicating a visa application until it makes a final decision—after "administrative processing"—to issue or refuse the visa application.

It is well established that the State Department has a discrete, nondelegable duty to issue or refuse a visa when it receives a visa application.[40] Accordingly, whether Plaintiffs' claims are moot depends on whether the Consulate's 221(g) notice and placement in administrative processing constituted a final decision that discharged the agency's legal obligations to Nabo's visa application. If it was a final refusal, the Court does not have subject matter jurisdiction to hear Plaintiffs' claims because he has already received the adjudication he seeks.[41] However, if the 221(g) notice and placement into administrative processing was not a final refusal of Nabo's visa application, Plaintiffs' claims are not moot and the Court has subject matter jurisdiction.

The Complaint alleges that "[a]t the conclusion of [Nabo's] interview, the U.S. Consular Officer issued a 221(g) notice to him noting that his immigrant visa application required additional administrative processing and requesting additional documents from him."[42] Plaintiffs then allege that Nabo provided the additional requested information and that his application has remained in "administrative processing" since that time.[43] There are no allegations in the Complaint that the visa application was "refused" at the interview. The Government attaches to

---

[40] 22 C.F.R. § 41.121(a); *Bimbo Bakeries USA, Inc. v. Rubio*, No. 24-5919, 2025 WL 860493, at *4 (E.D. Pa. Mar. 19, 2025).

[41] Moreover, if it was a final decision, Defendants argue that the doctrine of consular nonreviewability also applies to bar the court from considering Plaintiffs claims. Mot. Dismiss at 12-18 [Doc. No. 6]. Plaintiffs, however, are not challenging the merits of a refusal of Nabo's application: they are challenging the agency's inaction and failure to adjudicate his application at all. "Because the [Consulate] has a nondiscretionary duty to issue or refuse to issue a visa, . . . consular nonreviewability does not bar a challenge to the agency's delay in discharging its mandatory duty." *Bimbo Bakeries*, 2025 WL 860493, at *4. *See also Ahmed v. Holder*, 12 F. Supp. 3d 747, 754 (E.D. Pa. 2014); 5 U.S.C. § 706(1). Thus, the consular nonreviewability doctrine does not apply here.

[42] Compl. ¶ 7 [Doc. No. 1].

[43] *Id.* ¶¶ 8-10.

its Motion to Dismiss Nabo's application status on the State Department's Consular Electronic Application Center webpage, which reflects that his visa application is "Refused."[44]

The Court is not persuaded on the record before it in this case that a consular officer's purported "refusal" of a visa application operates as a final agency decision that concludes the agency's legal obligation to adjudicate the application when the officer places the application in processing. Defendants point to no statutory provision or regulation stating that a 221(g) "refusal" constitutes final agency action. In *Karimova*, upon which the Defendants rely, it appears that the court reached the conclusion that a 221(g) "refusal" is a final agency action based primarily on provisions of the State Department's Foreign Affairs Manual.[45] It is unclear, however, whether the Foreign Affairs Manual has any legally binding effect, and *Karimova* does not illustrate how the interpretation reflected in the Manual is consistent with the language of any Act of Congress.[46]

Moreover, the function served by the "administrative processing" limbo into which Nabo's application has been placed appears to be that he still can overcome the "refusal" of his application through the submission of additional information to the consular officer, which he has done. The Complaint alleges that: the consular officer believed more documentation was

---

[44] *See* Mot. Dismiss Ex. 1 [Doc. 6-1] (explaining that "[a] U.S. consular officer has adjudicated and refused your application.). The Court has since visited the Visa Status Check webpage and confirmed that Nabo's application is still considered "refused." *Visa Status Check*, Consular Elec. Application Ctr., https://ceac.state.gov/CEACStatTracker/Status.aspx?App=NIV (using Nabo's visa application number) (last visited June 3, 2025).

[45] *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *1–2 & n.1 (D.C. Cir. July 24, 2024) (citing provisions in the Manual); *Visas*, Foreign Affairs Manual, https://fam.state.gov/Volumes/Details/09FAM (last visited June 11, 2025).

[46] *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (overruling *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and emphasizing that courts are obligated to declare what the law is without deferring to agency's interpretations of ambiguous laws).

required and requested such documentation;[47] Nabo provided that documentation less than a week later;[48] the Consulate provided receipt of the documents;[49] and Nabo has still not received a final adjudication of his immigrant visa application, over a year later.[50] This is the opposite of the agency having already "[c]oncluded a matter presented to it."[51] Simply calling the post-interview decision "final" or a "refusal" does not make it so.

This conclusion is supported by a more fulsome review of Nabo's case status review on the State Department' website. As Defendants point out, the results indeed indicate that the agency "refused" Nabo's application.[52] But the status review also states that:

> A U.S. consular officer has adjudicated and refused your application. Please follow any instructions provided by the consular officer. **If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete.** Please be advised that the processing time varies and that you will be contacted if additional information is needed. For more information, please visit TRAVEL.STATE.GOV or the website for the Embassy or Consulate at which you made your visa application.
>
> For more information, please visit TRAVEL.STATE.GOV.[53]

As one court succinctly put it: "If the State Department informs an applicant that he 'will receive another adjudication' when the administrative processing is complete, then the State Department

---

[47] Compl. ¶ 7 [Doc. No. 1]; Compl. Ex. I [Doc. No. 1-2] (221(g) notice and request for more information provided to Nabo).

[48] Compl. ¶ 8.

[49] *Id.*

[50] *Id.* ¶ 9.

[51] 5 U.S.C. § 555(b).

[52] Mot. Dismiss at 5 [Doc. No. 6]; Mot. Dismiss Ex. 1 [Doc. No. 6-1].

[53] Mot. Dismiss Ex. 1 [Doc. No. 6-1] (emphasis added).

is essentially taking the position that the matter submitted to the agency has not been concluded while administrative processing is ongoing."[54]

The Third Circuit has never determined whether a 221(g) notice that places an application in administrative processing is a final decision. Courts in this Circuit have found that it is, and that such a notice fulfills the agency's obligation to adjudicate the application in a timely manner.[55] Other courts, however, have concluded that when an application is in administrative process, there has been no final decision, and the agency still has an obligation to adjudicate the application in a timely manner.[56]

To find Plaintiffs' claims moot on this basis "has the potential to shield from judicial review unreasonable delays that are prohibited by the APA."[57] If a 221(g) notice that places an application in administrative processing constitutes a final agency action and discharges the State Department's duty, the State could refuse any (or every) visa application for arbitrary reasons (or no reason at all), place it into the administrative processing queue, and then take far more time than is reasonable to adjudicate the petition. Nothing in the INA or the relevant implementing regulations suggests that Congress intended such a result.

---

[54] *Awal v. U.S. Dep't of State*, No. 24-382, 2024 WL 4979661, at *8 (D. Minn. Dec. 4, 2024) (quoting *Ebrahimi v. Blinken*, No. 23-3867, 2024 WL 2020038, at *5 (N.D. Ill. May 3, 2024)); *see also Billoo v. Baran*, No. 21-5401, 2022 WL 1841611, at *4 (C.D. Cal. Mar. 18, 2022).

[55] *See, e.g.*, *Denisova v. Mayorkas*, No. 23-1902, 2024 WL 2043664, at *4 (W.D. Pa. May 8, 2024); *Elhabash v. Dep't of State*, No. 09-5847, 2010 WL 1742116 (D.N.J. Apr. 27, 2010); *Bimbo Bakeries*, 2025 WL 860493; *Meleo v. Blinken*, No. 23-3495, 2024 WL 4345289 (D.N.J. Sept. 30, 2024); *Shams v. Dep't of State*, No. 24-4828, 2025 WL 984561 (D.N.J. Apr. 2, 2025).

[56] *See, e.g.*, *Jafarzadeh v. Blinken*, No. 23-770, 2024 WL 3937417, at *4 (E.D. Cal. Aug. 26, 2024) (rejecting as unpersuasive government's argument that a final decision had been made despite ongoing administrative processing); *Sharifi v. Blinken*, 731 F. Supp. 3d 433, 438 (E.D.N.Y. 2024) ("[T]hough nominally 'refused,' [plaintiff's] application remains under consideration in a state of administrative limbo that cannot fairly be described as a final determination."); *Asresash B.T. v. Blinken*, No. 22-1300, 2023 WL 2273158, at *2 (D. Minn. Feb. 28, 2023) ("Cases in administrative processing have not been finally refused.").

[57] *Awal*, 2024 WL 4979661, at *9.

11

Accordingly, the Court rejects Defendants' argument that Plaintiffs' claim is moot because it has already been finally adjudicated.

### B.  Unreasonable Delay

Satisfied that it has subject matter jurisdiction over the case, the Court turns to Plaintiffs' claims that the Defendants' alleged failure to finally adjudicate Nabo's request for a visa violated the APA and entitles them to a writ of mandamus due to unreasonable delay.

Under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[58] Under the APA, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."[59] Moreover, the APA permits courts to compel agency action that is "unreasonably delayed."[60] Under § 706(1), "a delay cannot be unreasonable with respect to action that is not required" by law.[61]

When evaluating whether an agency has unreasonably delayed discharging a nondiscretionary duty, courts consider the following *OCAWU* factors:

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act. Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agency's action. Third, the court should assess the consequences of the agency's delay. Fourth, the court should consider "any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources."[62]

---

[58] 28 U.S.C. § 1361.

[59] 5 U.S.C. § 555(b).

[60] *Id.* § 706(1).

[61] *Norton*, 542 U.S. at 63 n.1; *id.* at 64 ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.") (emphasis in original).

[62] *Oil, Chem. & Atomic Workers Union v. OSHA*, 145 F.3d 120, 123 (3d Cir. 1998) ("*OCAWU*").

Defendants argue that Plaintiffs fail to state an APA or mandamus claim because application of the *OCAWU* factors to facts alleged in the Complaint demonstrates that any alleged delay in this case is not unreasonable as a matter of law.[63]

Having reviewed the Complaint and the record in this case, the Court concludes that it cannot resolve the question of whether the delay alleged is unreasonable as a matter of law at the Motion-to-Dismiss stage. While it is true that some courts have found unreasonable-delay claims capable of resolution based on the *OCAWU* factors on a Rule 12(b)(6) motion,[64] here, the Court finds that the determination of the merits of the unreasonable-delay claim would be premature without the benefit of a more fully developed record.

As other circuits have observed, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of particular facts and circumstances before the court."[65] Here, Nabo's interview took place over a year ago, in May 2024, and he previously had pending non-immigrant, student visas that were stuck in "administrative processing" and never adjudicated.[66] Despite Defendants' arguments to the contrary, the Court cannot resolve whether the year-long delay in finally resolving Nabo's application is reasonable based on a "rule of reason." Defendants point to no binding authority establishing that a delay of 12 months cannot, as a matter of law, be unreasonable. The Court is also unable on this record to determine whether such a delay is reasonable "in the context of the statute authorizing the agency's action" or any "practical difficulty [or] need to prioritize in the

---

[63] Mot. Dismiss at 19-24 [Doc. No. 6].

[64] *See, e.g.*, *Shams*, 2025 WL 984561, at *7-8; *Meleo*, 2024 WL 4345289, at *10.

[65] *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).

[66] *See* Compl. ¶¶ 3, 5 [Doc. No. 1].

face of limited resources."[67] Moreover, as for the third *OCAWU* factor, the Court notes that the consequences of the agency's delay to Nabo have been significant: his course of study has been halted completely, and thus he risks financial loss, job loss, and loss of the credits he has already earned at the University of Pennsylvania, and he is currently separated from his entire immediate family, who all reside in the United States. A final balancing of the *OCAWU* factors should await a more fully developed record.[68]

Accordingly, Defendants' motion to dismiss Plaintiffs' unreasonable-delay claim for failure to state a claim is denied.

### IV. CONCLUSION

For the reasons set above, the Court will deny the Government's Motion to Dismiss. An order will follow.

---

[67] *OCAWU*, 145 F.3d at 123.

[68] *Saavedra Estrada v. Mayorkas*, 703 F. Supp. 3d 560, 571 (E.D. Pa. 2023) (denying motion to dismiss based on application of the *OCAWU* factors and awaiting a more thorough record before deciding the issue on the merits); *Feng v. Beers*, No. 13-2396, 2014 WL 1028371, at *8 (E.D. Cal. Mar. 14, 2014) (denying summary judgment motions based on application of the similar *TRAC* factors because the record was insufficiently developed); *Rodriguez v. Nielsen*, No. 16- 7092, 2018 WL 4783977, at *20 (E.D.N.Y. Sept. 30, 2018) ("The Court has insufficient information upon which to identify 'the source of delay,' the agency's allocation of its resources, and the extent to which Defendants may have 'participated in delaying the proceedings.'").